**In the Matter of Melvin WERTS, Appellant,**

**v.**

**FEDERAL NATIONAL MORTGAGE ASSOCIATION, Appellee.**

**Civ. A. No. 84–2473.**

United States District Court, E.D. Pennsylvania.

March 26, 1985.

 

Henry J. Sommer, Community Legal Services, Philadelphia, Pa., for appellant.

David Zeehandelaar, Bolger, Picker & Weiner, Philadelphia, Pa., for appellee.

## OPINION

JOSEPH S. LORD, III, Senior District Judge.

In November, 1969, plaintiff-debtor ("plaintiff") and defendant-creditor ("defendant") executed a residential mortgage under the terms of which plaintiff agreed to make monthly mortgage payments from January, 1970 to December, 1989. In March, 1981, however, plaintiff stopped making payments. Defendant then filed an action in mortgage foreclosure in the Philadelphia County Court of Common Pleas, and judgment was entered in favor of defendant in January, 1982. In February, 1982, plaintiff filed a petition under Chapter 13 of the United States Bankruptcy Code which stayed the scheduled Sheriff's sale of his house. Defendant then filed proof of secured claim in the bankruptcy proceeding, and plaintiff filed this complaint as an objection to defendant's claim.

Plaintiff raises two distinct issues. First, plaintiff argues that defendant failed to comply with the requirements of the Truth in Lending Act, 15 U.S.C. § 1640, when it issued disclosure documents to plaintiff in the 1969 mortgage transaction. As a result, plaintiff asserts defendant's claim must be reduced by $1,000.00. Second, plaintiff contends that the notice of foreclosure defendant sent plaintiff in 1981 did not satisfy the requirements of Pennsylvania Act No. 6 of 1974, 41 P.S. §§ 403–04. Consequently, plaintiff concludes that defendant may not include attorney's fees or costs in its claim.

The Bankruptcy Court initially denied plaintiff's objection to the claim. 36 B.R. 799 (Bkrtcy.1984). Plaintiff filed a motion to alter or amend judgment, arguing that the court had committed manifest error of law on the Truth in Lending issue. The court granted the motion initially, but later

vacated its order as "having been entered in error" and denied plaintiff's motion. Plaintiff then filed his notice of appeal to this court. I shall consider both the Truth in Lending issue and the Act 6 issue in turn.

### A. Plaintiff's Objections under the Truth In Lending Act and Regulations to the Original Loan Documents

The Truth in Lending Act was passed by Congress in 1968 to remedy what it perceived to be widespread consumer confusion about the nature and cost of credit obligations. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 363–64, 93 S.Ct. 1652, 1657–58, 36 L.Ed.2d 318 (1973). The purpose of the Act is "... to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and to avoid the uninformed use of credit...." 15 U.S.C. § 1601. As a result, the Act and the Federal Reserve Board's Regulation Z, 12 C.F.R. § 226.1 *et seq.*, require that certain disclosures be made clearly, conspicuously, in a meaningful sequence, and in specific terms. 12 C.F.R. § 226.6(a).

■ Plaintiff alleges that in his original loan documents, some of the required disclosures were not made in the precise terms prescribed by Regulation Z and some were not made at all. The Bankruptcy Court addressed only the first of these concerns:

> The debtor asserts that the original loan documents are defective in failing to express the annual percentage rate of the loan and the amount financed. Our review of the pertinent documents indicates that FNMA did make these necessary disclosures although the terms were not specifically denominated as such. Thus, this basis for the debtor's objection to the proof of claim is without merit.

At 802. I find, however, that defendant's failure to use the precise language set forth in Regulation Z coupled with defendant's omission of certain required disclosures violated the Act.

Plaintiff first points to the absence in the documents given to him of the terms "annual percentage rate" and "amount financed" as specifically required by 12 C.F.R. § 226.8. In *F.T.C. v. Beauty-Style Modernizers, Inc.*, 513 F.2d 625 (3d Cir. 1975) *cert. denied* 423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 93 (1975), the Third Circuit affirmed the decision of the F.T.C. that a creditor violated the Act when it substituted its own terms for those prescribed in the Regulation. As in our case, one of the terms the creditor omitted was "amount financed". The F.T.C. stated:

> There is no such thing as substantial compliance with the Truth in Lending Act and the Regulation. Either you are or you aren't. The purpose of that statute is to permit the ordinary consumer, without regard to the degree of his commercial sophistication, to receive the kind of credit information that will allow him effectively to compare the credit terms being offered in the marketplace and thus to "shop" for the most favorable terms available.

*In re Beauty-Style Modernizers, Inc.*, CCH Cons. Cred. Guide ¶¶ 98, 791 (F.T.C. 1974). *See also Pennino v. Morris Kirschman & Co.*, 526 F.2d 367, 370 (5th Cir.1976) (failure to use the term "new balance" is a violation of the Act) and *Mason v. General Finance Corporation of Virginia*, 542 F.2d 1226, 1233 (4th Cir.1976) (use of terminology "Contract Rate" is incompatible with the mandatory terminology "Finance Charges" and "Annual Percentage Rate").

■ Moreover, plaintiff need not claim that he was actually deceived by the absence of the terms in order for the court to find that the Act was violated. *Dzadovsky v. Lyons Ford Sales, Inc.*, 593 F.2d 538, 539 (3d Cir.1979). In fact, in *Thomka v. A.Z. Chevrolet*, 619 F.2d 246, 250 (3d Cir. 1980), the Third Circuit cited a Fifth Circuit holding that "[o]nce the court finds a violation, no matter how technical, it has no discretion with respect to the imposition of

liability." *Grant v. Imperial Motors,* 539 F.2d 506, 510 (5th Cir.1976).

■ Plaintiff next points to defendant's failure to set forth the due dates of the mortgage payments as required by 12 C.F.R. § 226.8(b)(3). While a letter addressed to plaintiff and dated five days before the mortgage was executed did inform plaintiff that payments would be due "on the first of each month ... until further notice," this information is not included on the documents containing the other terms of the mortgage agreement. Both the case law and the regulation state clearly that all required disclosures must appear on a single page unless a precisely worded notice directing the borrower to information on other documents appears on the page containing the majority of the disclosures. *Gennuso v. Commercial Bank and Trust Co.,* 566 F.2d 437, 441 (3d Cir. 1977); *Thomka, supra,* 619 F.2d at 249; 12 C.F.R. § 226.8(a). No such notice appears on the disclosure documents in question.

Defendant also failed to disclose the "amount or method of computing the amount of any default, delinquency or similar charges payable in the event of late payments." This information is required by 12 C.F.R. § 226.8(b)(4).

■ While defendant does not dispute plaintiff's specific allegations of inadequate disclosures under the Act, it does raise two defenses. First, defendant points to 15 U.S.C. § 1612(b) which states, "[n]o civil or criminal penalty provided under [the Truth in Lending Act] for any violation thereof may be imposed upon the United States or any agency thereof ..." Defendant argues that it is an agency of the U.S. Government and that therefore plaintiff cannot recoup statutory damages under the Act. This defense was correctly rejected by the Bankruptcy Court. At 801. Courts in several circuits have stated convincingly that since 1968, F.N.M.A. has been considered a privately-owned corporation in suits against private citizens. For example, in *Roberts v. Cameron-Brown Co.,* 556 F.2d 356 (5th Cir.1977), the Fifth Circuit explained:

Although regulated by the Government in some aspects of its business, F.N.M.A. is essentially a privately-owned mortgage banker.... In 1968, Congress specifically disassociated F.N.M.A. from its previous ownership and transferred it to private ownership. 2 U.S.Cong. & Admin. News 1968 at 2943–44. F.N.M.A. maintains the capital structure of a privately owned corporation. 12 U.S.C. § 1718.... We stand with the Sixth Circuit position that although the regulating statutes impose certain obligations on F.N.M.A., the federal government and F.N.M.A. have not become so interdependent as to make its actions the actions of the federal government.

*Id.* at 359. *See also Northrip v. F.N.M.A.,* 527 F.2d 23 (6th Cir.1975). Indeed, in 1968, Congress split the Federal National Mortgage Association into two separate and distinct corporations. One is the Government National Mortgage Association which was to "remain in the government." The other is F.N.M.A., "a government-sponsored private corporation." 12 U.S.C. § 1716b. Therefore, plaintiff's recoupment claim is not barred by 15 U.S.C. § 1612(b).

■ F.N.M.A.'s second defense is that plaintiff's objection is barred by the Truth in Lending Act's one year statute of limitations. This provision states:

Any action under this subsection may be brought ... within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by state law.

15 U.S.C. § 1640(e). The Bankruptcy Court recently held that the filing of a proof of claim is "an action to collect the debt" under § 1640(e) which allows a debtor to file a timely objection asserting violations of the Act. *Hanna v. Lomas & Nettleton Company,* (In Re Hanna), 31 B.R. 424 (Bankr.E.D.Pa.1983). I find the court's

reasoning persuasive. *See also In re Joyce,* 41 B.R. 249 (Bankr.E.D.Pa.1984); *In Re Galea'i,* 31 B.R. 629 (Bankr.D.Ha.1981), and *In re Remington,* 19 B.R. 718 (Bankr.D.Colo.1982). Denying plaintiff the right to file a timely objection to defendant's claim would frustrate the purpose and spirit of the legislation. The Bankruptcy Court therefore correctly rejected this defense. Slip op. at 802.

Since I have found that the disclosure documents defendant sent plaintiff in 1969 failed to comply with the requirements of the Truth in Lending Act in several respects, and since I have found that F.N.M.A.'s defenses are without merit, I can only conclude defendant's claim must be reduced by $1,000.00.[1]

**B. Plaintiff's Objection Under Pennsylvania's Act 6 to the Notice of Foreclosure**

Plaintiff also asserts that the notice and intention to foreclose which defendant sent plaintiff in 1981 failed to comply with the requirements of Pennsylvania's Act 6 in several crucial ways. Consequently, plaintiff argues defendant is not entitled to attorney's fees and costs incurred in the foreclosure proceedings.

Act 6 grants residential mortgage debtors the right to be notified in writing of certain specific information at least thirty days before the mortgage lender can accelerate the maturity of the mortgage obligation, commence any legal action, or take possession of any security of the debtor. The notice must "clearly and conspicuously

state ... [t]he right of the debtor to cure the default ... and exactly what performance including what sum of money, if any, must be tendered to cure the default." 41 P.S. § 403(c).

Plaintiff argues, and I agree, that the notice of foreclosure plaintiff received is far from clear as to what sum of money had to be tendered at what time to cure the default. Paragraph 2 of the notice provides a chart demonstrating what payments were due at what times, and how the total amount due had been calculated. This paragraph, standing alone, is comprehensible. Paragraph 3 of the notice then states: "YOU MAY CURE THE DEFAULT AND RESTORE THE MORTGAGE TO THE SAME POSITION AS IF THE DEFAULT HAD NOT OCCURRED BY PAYING TO US IN FULL THE AMOUNT OF $619.66 WITHIN THIRTY-FIVE (35) DAYS AFTER THE DATE OF THIS NOTICE ..." Of course, as explained in paragraph 2 of the notice, the full $619.66 would only have become due near the end of the thirty-five day period when plaintiff's next monthly payment and additional late fees were added to the total amount required to cure the default.[2]

In paragraph 5, the notice explains:

Notwithstanding the provisions of any other law, YOU HAVE THE RIGHT TO CURE THE DEFAULT as follows:

A. *During the thirty-five (35) period following the date of this notice* by:

(1) PAYING OR TENDERING PAYMENT OF THE SUM STATED IN

---

**1.** 15 U.S.C. § 1640 provides:

(a) Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part ... with respect to any person is liable to such person in an amount equal to the sum of—
(1) any actual damages sustained by such person as a result of failure;
(2)(A)(i) in the case of an individual action twice the amount of any finance charge in connection with the transaction ... except that the liability under this subparagraph shall be not less than $100 nor greater than $1,000....

Plaintiff does not claim any actual damages pursuant to § 1640(a)(1). Plaintiff's finance

charge, as that term is defined in 15 U.S.C. § 1605, exceeds $500.00. Plaintiff is therefore entitled to recoup $1000.00, the maximum amount of damages allowed under § 1640(a)(2)(A).

**2.** Plaintiff notes, and I agree, that the inclusion of late fees is in itself a violation of Act 6. Under 41 P.S. § 404(b)(4), late penalties may be included in the amount due to cure only if there is notice of such a penalty in the security document. Plaintiff's mortgage documents do not contain any provision regarding late fees. Thus, the amount due to cure listed on the notice to foreclose is incorrect for the additional reason that it includes unauthorized late fees.

PARAGRAPH NUMBERED 3 OF THIS NOTICE AS PROVIDED IN PARAGRAPH NUMBERED 3 OF THIS NOTICE:

(a) *IF PAYMENT IS MADE OR TENDERED DURING THIS THIRTY-FIVE (35) DAY PERIOD, BUT AFTER THE 17th DAY OF THIS MONTH,* add *AN ADDITIONAL LATE CHARGE PAYMENT OF $2.44.*

(b) *IF PAYMENT IS MADE OR TENDERED NEXT MONTH, BUT WITHIN THIS THIRTY-FIVE DAY PERIOD,* add *ANOTHER MONTHLY PAYMENT* of $121.98 and add *ANOTHER LATE CHARGE IF PAYMENT IS MADE OR TENDERED AFTER THE 17th DAY OF THAT MONTH.*

Since this explanation refers plaintiff back to the $619.66 sum set forth in paragraph 3, plaintiff may well have believed he owed $619.66 *plus* $121.98 and additional late fees if he paid within the thirty-five day period. Even if plaintiff tried to compare the explanations in paragraph 5 with the computations in paragraph 2, he would have found discrepancies as to the dates within the thirty-five day period on which additional sums became due.

■ Although the Bankruptcy Court found that the notice, when viewed in its entirety, complies with Act 6, I cannot agree. I simply do not believe the notice "clearly and conspicuously state[s] ... exactly what ... sum of money ... must be tendered to cure the default" as Act 6 requires. In addition, I agree with plaintiff that the notice contains various incorrect and threatening statements. In ¶ 4, for example, the notice states that without further notice, "WE MAY BEGIN LEGAL PROCEEDINGS TO FORECLOSE THE MORTGAGE, IN WHICH THE SHERIFF MAY SELL YOUR HOUSE." Such language has been considered a complete misstatement of the law, and one of the reasons which justifies striking a default judgment. *Bankers Mortgage Corp. v. DiPersio,* (C.P.Phila., Charles A. Lord, J., opinion dated November 1, 1982). It is, at the very least, misleading. In addition, the paragraph states: "WE MAY TAKE POSSESSION OF ALL OR ANY PART OF YOUR PROPERTY AS AND WHEN PERMITTED BY LAW." This is also misleading, despite the phrase "as and when permitted by law" because defendant could never take possession of *all* of plaintiff's property.

■ Nevertheless, although I have no doubt this notice does not comply with the requirements of Act 6, I cannot allow plaintiff to recoup the amount of attorney's fees and costs defendant claims as a result of the foreclosure action. Plaintiff suggests that since 41 P.S. § 403(a) prohibits an action to foreclose until 30 days after a valid notice is sent to the debtor, and since 41 P.S. § 406 provides that a creditor may collect attorney's fees from a debtor upon commencement of a foreclosure action, no attorney's fees may be claimed if it is later determined in the federal proceeding that the foreclosure notice was invalid. Plaintiff relies on 11 U.S.C. § 502(b)(1) which states that the court will not allow a claim in bankruptcy if it is "unenforceable against the debtor, and unenforceable against property of the debtor, under any agreement or applicable law...."

Plaintiff's reasoning is convoluted at best. I know of no law that renders defendant's claim for attorney's fees from the long-ago concluded foreclosure proceedings unenforceable. Since the judgment of foreclosure stands unmolested, defendant's claim for attorney's fees is enforceable. What plaintiff really objects to is the judgment of foreclosure itself. Plaintiff's proper and obvious remedy was to raise his objections to the notice at the foreclosure proceeding and to seek to have the complaint in foreclosure dismissed. Unfortunately, plaintiff failed to do so, and I have no authority to mitigate the consequences of his failure by allowing him to recoup defendant's attorney's fees and costs in this proceeding.

C. Conclusion

Defendant's claim will be reduced by a $1,000.00 recoupment claim because de-

fendant violated the Truth in Lending Act in its 1969 mortgage transaction with plaintiff. Defendant's claim will not be reduced by the amount of attorney's fees and costs it claims arose out of its mortgage foreclosure action against plaintiff.