Vincent T. GAMBALE &
Deborah Gambale

v.

The LOMAS & NETTLETON
COMPANY.

Civ. A. No. 87–6555.

United States District Court,
E.D. Pennsylvania.

Dec. 9, 1987.

Philip A. Bertocci, Philadelphia, Pa., for debtors/plaintiffs.

David B. Comroe, Philadelphia, Pa., for defendant.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 trustee.

## ORDER

KATZ, District Judge.

■■■ AND NOW, this 7th day of December, 1987, upon consideration of the briefs of appellants and appellees and the reply brief of appellants, it is hereby ORDERED that the Order of the Bankruptcy Court docketed September 14, 1987 is AFFIRMED upon the Memorandum of Bankruptcy Judge Scholl (dated September 11, 1987) and upon Judge Scholl's opinion in *In Re Ashhurst, Ashhurst v. Meritor Savings Bank*, 80 B.R. 49, (Bankr. E.D.Pa.1987).

## APPENDIX

*United States Bankruptcy Court for the Eastern District of Pennsylvania*

Bankruptcy No. 86–03086S.

Adversary No. 87–0239S.

In re Vincent T. Gambale and Deborah Gambale, Debtors.

Vincent T. Gambale and Deborah Gambale, Plaintiffs,

v.

The Lomas and Nettleton Company, Defendant.

MEMORANDUM

By: DAVID A. SCHOLL, United States Bankruptcy Judge.

As in *In re Torres, Torres v. Beneficial Saving Bank*, Bankr. No. 86–04599S, Adv. No. 87–04825S (Bankr.E.D.Pa., Memorandum and Order filed Aug. 24, 1987) [Available on WESTLAW, 1987 WL 33815], we are faced with a proceeding which raises issues which we have already repeatedly and recently confronted and addressed in other proceedings before us. *See also In re Martin*, 72 B.R. 126, 129 (Bankr.E.D.Pa. 1987). For this reason, we can therefore dispose of this matter in a short Memorandum.

This proceeding represents an action by married joint Chapter 13 Debtors to reduce a claim of their home-purchase first mortgagee, THE LOMAS AND NETTLETON COMPANY (hereinafter referred to as "the Mortgagee"), on the basis of a recoupment claim arising from alleged violations of the federal Truth-In-Lending Act (hereinafter referred to as "TILA"), 15 U.S.C. § 1601, et seq., in the writing of the Mortgage transaction.

■■■ Two TILA violations are alleged here. Our prior decisions establish that both are meritorious. The first is the ubiquitous claim that the security interest taken by the Mortgagee was not properly disclosed, as required by the applicable (mortgage written March 25, 1977) "old" version of the TILA and its effecting Regulations, 15 U.S.C. § 1638(a)(10) and 12 C.F.R. § 226.8(b)(5), respectively. The disclosure statement provided pursuant to the TILA states in pertinent part that "[t]he security for this obligation is 2004 S. Norwood St., Phila., PA. 19145." Meanwhile, the Mortgage states as follows:

ALL the following described property situate in the City of Philadelphia, County of Philadelphia and Commonwealth of Pennsylvania, to wit: ALL THAT CERTAIN lot or piece of ground with the buildings and improvements thereon erected ... BEING NO. 2004 S. Norwood Street ...

TOGETHER with all and singular the buildings, improvements, and fixtures on said premises, as well as all additions or improvements on or hereafter made to said premises, streets, alleys, passages, ways, waters, water courses, rights, liberties, privileges, hereditaments, and appurtenances whatsoever thereunto belonging, or in any wise appertaining, *and the reversions and remainders, rents, issues, and profits thereof, and in addition thereto the following described*

*household appliances, which are, and shall be deemed to be fixtures and a part of the realty, and are a portion of the security for the indebtedness herein mentioned, namely, ALL PLUMBING, HEATING, LIGHTING, AND COOKING EQUIPMENT* (emphasis added).

Although the violation here is less egregious than in some other similar contexts, it is nevertheless appropriate to observe, as we did in *In re Johnson-Allen*, 67 B.R. 968, 974 (Bankr.E.D.Pa.1986), a case involving this same Mortgagee, that the disclosures fail to jive with the security actually taken in the mortgage. The disclosure statement makes no mention of a taking of a security interest in any fixtures, and the mortgage proceeds to define, *inter alia*, all lighting equipment as fixtures, much of which ordinarily would *not* be classified as fixtures. On the basis of the reasoning in *Johnson-Allen* and the specific characterization of a similar disclosure-statement-and-mortgage combination as violative of the TILA in subsequent cases makes the result here rather clear. *See In re Dangler, Dangler v. Central Mortgage Co.*, 75 B.R. 931, 933–34 (Bankr.E.D.Pa.1987); *In re Matzulis*, 74 B.R. 552, 554 (Bankr.E.D.Pa.1987) (same Mortgagee); and *Martin, supra*, 72 B.R. at 128.

█ The second alleged violation is the lack of compliance with the provisions of the "old" version of the TILA regarding imposition of late charges, set forth in 15 U.S.C. § 1638(a)(9) and 12 C.F.R. § 226.8(b)(4), which require that the amount and method of such charges be disclosed. The instant disclosure statement provides that "[i]n the event of late payments, charges may be assessed by the lender at 4% of the total amount of monthly payments then past due." According to the Mortgagee, per its Brief, despite the clear apparent wording of the disclosure to the contrary, "[t]his paragraph does not provide for a late charge on the monthly payments then due, but provides for a late charge on the monthly payments past due, namely a late charge on the monthly payments unpaid more than fifteen (15) days after their due date." Memorandum of

Law of the Lomas and Nettleton Company, at 7. Presumably, this explanation means that the late charge is calculated by taking four (4%) percent of the *current* monthly *payment* which is late, rather than the entire amount of monthly payment*s* then due.

Following our decision in *Dangler*, 75 B.R. at 933, we find the language of the disclosure statement lacking in the requisite clarity. The disclosure clearly could mean a computation of four (4%) percent of either of two figures, i.e., the current monthly payment only or the entire accrued delinquency of all monthly payments then past due. Frankly, the latter, incorrect interpretation appears to us to be a more logical reading of the language appearing in the disclosure statement than the former correct interpretation. Hence, far from being merely imperfect, as the Mortgagee concedes, the language of the disclosure statement is totally and completely misleading.

█ Finally, the Mortgagee attempts to reopen our holding, in *Dangler*, at 936, and *Johnson-Allen*, 67 B.R. at 974, that the "old" version of the TILA was consistently held, by courts in this Circuit, to authorize multiple recoveries for multiple obligors. We were well aware of the presence of *Brown v. Marquette Savings & Loan Ass'n*, 686 F.2d 608, 614–15 (7th Cir.1982), quoted at length by the Mortgagee, when we decided *Johnson-Allen*, as our citation to that case therein indicates. The Mortgagee argues that the elimination of multiple recoveries in an amendment to 15 U.S.C. § 1640, i.e., new § 1640(d), effective as to contracts post-dating October 1, 1982, establishes that multiple recoveries were unauthorized all along. However, if this statement is correct and they were unauthorized all along, then why would any amendment be necessary? The presence of the amendment is, in our view, equally suggestive of a Congressional intention to *change* the prior law, or an intention to settle a conflict of interpretations which were equally defensible under the previous law.

Therefore, it follows that we must reduce the Mortgagee's secured claim by a $2,000.00 TILA recoupment penalty, from $6,967.32 originally claimed, to $4,967.32. We note, as we did in *Torres, supra*, and *Martin, supra*, 72 B.R. at 129, that the only effect of reiteration of issues previously decided by us is to effect upon the Mortgagee a further reduction of its claim in an award of attorney's fees, per 15 U.S. C. § 1640(a)(3).

Dated at Philadelphia, PA, this 11th day of September, 1987.